Van Voorhis, J.
This controversy arises over how much in real estate taxes plaintiff was obligated to pay to defendant for the tax years 1955 through 1959 on a leased parcel of land on Falls Street in the City of Niagara Falls. This real property rented by plaintiff from defendant consisted of 19% of the land area of a parcel of 36,960 square feet owned by defendant abutting on the south 280 feet on Falls Street and measuring 132 feet in depth bounded on the west by Second Street and on the east by Third Street. The curving tracks of defendant, the New York Central Railroad Company, are at the rear. Defendant owned the area between Second, Third and Falls Streets for its railroad station which, as shown by the exhibits, is rectangular in shape fronting 88 feet on Falls Street (adjoining plaintiff’s demised premises on the west) and extending lengthwise along the east side of Second Street back to the railroad. The problem confronting us arises from the circumstance that the whole 36,960 square feet were assessed to defendant and the lease required plaintiff to pay to defendant the amount of taxes properly allocable to the 7,280 square feet covered by its lease. The building on the leased land presents no problem. It was assessed at $15,000 so that, although defendant made a slight overcharge to plaintiff on the building, the amount owed by plaintiff to defendant by *176 reason of the building is ascertainable mathematically from the amount of the assessed valuation fixed for the building and the judgment entered upon the order of the Appellate Division awards to plaintiff the amount of the building overcharge. The sole controversy, insofar as concerns the decision to be made by us, involves the allocation of the land assessment as between these two parties.
This litigation was sparked by the action of the City Assessor who on February 24, 1960 separated the total land assessment of $212,900 by allocating $40,330 to plaintiff instead of the $92,244 which defendant had allocated to plaintiff during the years in controversy prior to this separation of the land assessment by the assessor. The assessor did this on a square foot basis, assuming all of the square footage in the total area to be of equal value, and thus computed plaintiff’s share of the assessment at the said figure of $40,330 by assigning to plaintiff 19% of the total land assessment which was in proportion to the area of the land covered by plaintiff’s lease. During the years in litigation, viz., the tax years 1955 through 1959, defendant, making its own allocation, assigned to plaintiff 43% of the total land assessment. Special Term found in favor of plaintiff by adopting substantially the allocation made by the assessor in 1960 on a proportionate square footage basis. The Appellate Division, in effect, reversed (although its order is in the form of a modification) by eliminating all recovery by plaintiff for excess payments made by it in regard to the land (except an overcharge of $1,065.14 for the last year in litigation, based on the assessor’s allocation) and by allowing small recoveries to plaintiff by reason of admitted overcharges with respect to taxes paid by reason of the building.
There is no contention that the value of these lands has changed materially during the years in question, and there is, of course, an inconsistency in the payment by plaintiff of more than twice as much per annum on account of real property taxes during the years in suit as compared with the amounts payable after the separate allocation of the land assessment by the assessor during the tax year 1960. The decision by the Appellate Division assumes that what the assessor did was erroneous, but followed it as to a portion of the last year in suit.
The lease between the parties controls the proportion in which *177 the tax burden is to be shared during the years in dispute. Inasmuch as these lots were all assessed to defendant, the New York Central Railroad Company, including the land leased to plaintiff on which it erected a building, the real property taxes had to be paid by the Central which then billed plaintiff for its supposed portion of the annual tax. This was done pursuant to a provision in the printed lease and a typewritten rider annexed thereto. The printed.portion reads as follows: “The Lessee covenants and agrees to pay to the Lessor the said rent above reserved, on the days and in the manner limited and prescribed as aforesaid for the payment thereof, without any deduction or delay; and as a further consideration for this lease the Lessee covenants and agrees to and with the Lessor to pay or cause to be paid to the Lessor all charges for water rates or rents and all taxes, duties and assessments, which may during the said term hereby granted, be charged, assessed or imposed upon the said demised premises, and upon any and all buildings, structures, betterments or other improvements upon or to be placed upon the said premises by the Lessee and if the said premises are not taxed separately but as a part of a larger tract or parcel or in connection therewith, then the Lessee shall pay a reasonable and equitable portion as fixed and determined by the Lessor of the taxes upon the whole part or parcel.”
The typewritten addendum, attached prior to execution of the lease, provided: “ It is covenanted and agreed, by and between the parties hereto, that in addition to the annual rental herein reserved the Lessee shall pay to the Lessor on the first day of each and every month during the term of this lease the sum of Four Hundred and Thirty Dollars ($430.00) to apply on taxes assessed against the above demised premises and the improvements thereon, and at the end of each year the total tax payments shall be adjusted as between the Lessor and Lessee to an amount equal to the actual taxes payable on both land and improvements.”
Plaintiff contends that these two provisions conflict. The Appellate Division said that these typewritten provisions of the lease are not irreconcilable but “ may be read together so as to give reasonable meaning to both.” We agree with the Appellate Division in this respect, but that does not decide *178 the appeal. It seems plain that the reference to “ actual taxes payable ” in the typed clause is 'Synonymous with a “ reasonable and equitable portion ’’ which is the tax obligation of plaintiff as stated in the printed clause. The typed phrase “ actual taxes payable” does not mean that the taxes had to be apportioned on a square footage basis alone.
The Appellate Division decided against plaintiff on the allocation of the land taxes (except for a fraction of the year 1960 when the Appellate Division allocated the land tax on the square footage basis as adopted by the reassessment by the assessor) upon the ground that the lease contemplated that the allocation should be made by defendant Central in the first instance, that its division of the amounts payable by the. parties respectively was presumably valid, and that “ The plaintiff offered no proof as to the fair valuation of the property or that the apportionment determined by the defendant could not be supported by any recognized method of appraisal.”
The approach taken by the Appellate Division appears to be right except that, as we read the record, it does not sustain the conclusion reached in the paragraph which has just been quoted. The City Assessor did not ascribe much importance to depth tables and “ in the years that I have been there, I have avoided going into corner influence.” He testified that he did not think that a corner lot in a mercantile area such as this with no display windows on the side street was more valuable than an inside Lot. He admitted that it was common practice for assessors to use a corner influence factor in making assessments of other types of property.
This testimony by the City Assessor was, at least, some evidence of the correctness of the findings of the trial court which followed the assessor’s method of allocation. The Appellate Division had jurisdiction over the facts, however, and its reversal of findings of fact of the trial court and making new findings may be regarded as having nullified this finding. It is open to us on this appeal to decide which findings more nearly accord with the record, but it is difficult to reach the conclusion that every square foot of this area was of the same value as every other square foot, without regard to such factors as the frontage on Falls Street (an important street in Niagara Falls), the depth, corner influence and so forth. An analysis of *179 the testimony of defendant’s expert witness J. W. Oppenheimer, however, demonstrates that the self-serving allocation of annual taxes made by defendant was materially incorrect even if it does not establish what allocation would be right.
The frontage of the total parcel on Falls Street was, as has been stated, 280 feet. Of this, plaintiff leased 192 feet at the east end extending to Third Street. This parcel of originally vacant land, on which plaintiff erected a building, was but 35 feet in depth except that where if adjoined the railroad station on the west it had a depth of 40 feet over a width of 7 feet. Subtracting this leased land from the total Falls Street frontage leaves a frontage on Falls Street of 88 feet occupied by defendant’s railroad station which extended at greater length north along the east side of Second Street. When witness Oppenheimer used the Cleveland depth table and allowed for corner influence in the case of plaintiff’s parcel at the corner of Falls and Third Streets, he overlooked that the same factors applied to defendant’s land underlying its railroad station at the corner of Falls Street and Second Street, as well as the rest of its land lying to the rear at the approach to the railroad. What goes for one party goes also for the other. If Oppenheimer’s method of computation, by which he built up the value of the land allocated to plaintiff, were applied also to the remaining property of the defendant, it would build up a total land value for the whole parcel of $273,348, which is $60,448 more than the $212,900 that was the land assessment for the entire area during the years in question. Even after ascribing to defendant everything which he could, including charging plaintiff with the frontage and corner factors which he neglected to do to the defendant, the largest amount that Oppenheimer could allocate to plaintiff was $85,431 which is $6,813 or about 7½% less than the $92,244 which the defendant attributed to the leased premises.
The $430 payable monthly by plaintiff to defendant for taxes, under the rider attached to the lease, was tentative only and was subject to an adjustment at the end of each year. Defendant assumed to make the adjustment on its own terms, and plaintiff can hardly be charged with making voluntary payments or laches in relying upon the correctness of defendant’s figures in the statements which it rendered. The record simply does *180 not show what would have been a correct allocation of the burden of paying these taxes, although it does demonstrate that the allocation made by defendant was wrong.
The order appealed from should be reversed and a new trial granted in accordance with this opinion, with costs to appellant to abide the event.